IN THE UNITED STATES DISTRICT COURT FOR THE
WESTERN DISTRICT OF MISSOURI
WESTERN DIVISION

| | |
|---|---|
| NATHANIEL HACK, ) | |
| ) | |
| Petitioner, ) | |
| ) | |
| vs. ) | Case No. 16-04089-CV-W-ODS |
| ) | |
| WARDEN JAY CASSADY, ) | |
| ) | |
| Respondent. ) | |

<u>ORDER AND OPINION (1) DENYING PETITIONER'S
AMENDED PETITION FOR WRIT OF HABEAS CORPUS, AND
(2) DECLINING TO ISSUE A CERTIFICATE OF APPEALABILITY</u>

Pending is Petitioner's Amended Petition for Writ of Habeas Corpus. Doc. #20. For the following reasons, Petitioner's Amended Petition is denied, and the Court declines to issue a certificate of appealability.

**I.  BACKGROUND**

In 1995, Petitioner Nathaniel Hack shot and killed Codizia Anderson. At the time, Petitioner was fifteen years old. In 1996, Petitioner was convicted of first degree murder and sentenced life imprisonment without eligibility for parole. Doc. #1-1.[1] His conviction was affirmed. Doc. #1, at 1.[2] No immediate post-conviction proceeding was filed.

In 2013, Petitioner filed a petition for writ of habeas corpus with the Missouri Supreme Court, arguing his sentence was unconstitutional pursuant to *Miller v. Alabama*, 567 U.S. 460 (2012). Docs. #1-3, 1-4. In *Miller*, the United States Supreme Court held mandatory life imprisonment without parole for those under the age of eighteen at the time of their crimes violated the Eighth Amendment's prohibition on cruel and unusual punishment. 567 U.S. at 479-80. In 2016, the United States Supreme

---

[1] At the time, the only sentence Petitioner could receive was life in prison without eligibility for parole. Mo. Rev. Stat. § 565.020.2 (1986).
[2] Page references denote the pagination assigned by the Court's CM/ECF system. Thus, the Court's page references may differ from the party's original pagination.

Court determined *Miller* "announced a substantive rule that is retroactive in cases on collateral review." *Montgomery v. Louisiana*, 136 S. Ct. 718, 732 (2016).

On March 15, 2016, the Missouri Supreme Court granted Petitioner's petition, concluding he "shall be eligible to apply for parole after serving 25 years' imprisonment on his sentence of life without parole unless his sentence is otherwise brought into conformity with *Miller* and *Montgomery* by action of the governor or enactment of necessary legislation." Doc. #1-2, at 2. Two weeks later, Petitioner moved for a rehearing, arguing the Missouri Supreme Court's "remedy" for his *Miller* violation was unconstitutional. Doc. #20-6. Before Petitioner's motion was decided, a new Missouri law went into effect on July 13, 2016, which, in relevant part, states the following:

> Any person sentenced to a term of imprisonment for life without eligibility for parole before August 28, 2016, who was under eighteen years of age at the time of the commission of the offense or offenses, may submit to the parole board a petition for a review of his or her sentence…after serving twenty-five years of incarceration on the sentence of life without parole.

Mo. Rev. Stat. § 558.047.1(1); Doc. #20-7, at 1.

On July 19, 2016, the Missouri Supreme Court vacated its March 15, 2016 Order. Doc. #20-2. In its entirely, the Order states: "On the Court's own motion, the Court's March 15, 2016, order is vacated. The motion for rehearing is overruled as moot. The petition is denied. See Senate Bill No. 590, 98th General Assembly. All other pending motions are overruled as moot." *Id*. On September 19, 2016, Petitioner filed another petition for writ of habeas corpus with the Missouri Supreme Court, arguing his sentence remains unconstitutional, and the new Missouri law is unconstitutional. Docs. #20-9, 20-10.

In the meantime, Petitioner was granted leave to amend his petition in this matter. Docs. #17-18. In the Amended Petition, Petitioner continues to allege his sentence is unconstitutional, but he also contends the new Missouri law does not resolve the constitutional violation. Doc. #20. The Court granted Petitioner's request to stay this proceeding until the Missouri Supreme Court issued its decision on Petitioner's second petition for writ of habeas corpus. Docs. #15, 23.

On May 30, 2017, the Missouri Supreme Court denied Petitioner's second petition for writ of habeas corpus. *State ex rel. Hack v. Cassady*, No. SC95948 (Mo.

2

banc May 30, 2017). The Court directed the parties to show cause why the stay should not be lifted. Doc. #24. Petitioner informed the Court he recently filed a petition for writ of habeas corpus in the Circuit Court of Texas County, Missouri, arguing the new Missouri law violated his constitutional rights. Doc. #25-1. Because that claim had not been exhausted, Petitioner asked the Court to continue to stay this matter. Doc. #25. The Court granted the request, and stayed the matter pending resolution of Petitioner's petition for writ of habeas corpus filed in the Circuit Court of Texas County. Doc. #27.

On September 11, 2017, the Circuit Court of Texas County denied Petitioner's claim, only stating there were "no grounds for issuance of the requested writ and therefore the Petition For Writ of Habeas Corpus is denied." Doc. #34-2, at 77. Petitioner appealed, and on September 25, 2017, the Missouri Court of Appeals denied the petition: "Having seen and examined said application and having been advised in the premises, the Court does deny the petition." Doc. #34-3, at 42. Petitioner appealed, and on July 3, 2018, the Missouri Supreme Court denied his claim. Doc. #34-4. The Court's opinion, in its entirety, declared, "Now at this day, on consideration of the petition for a writ of habeas corpus herein to the said respondent, it is ordered by the Court here that the said petition be, and the same is hereby denied." *Id.*

Following the Missouri Supreme Court's decision, this Court lifted the stay, and directed Respondent to respond to Petitioner's Amended Petition. Doc. #32. After failing to timely respond, the Court directed Respondent to show cause why the relief sought by Petitioner should not be granted. Doc. #33. On September 18, 2018, Respondent filed his response. Doc. #34. After receiving two extensions of time, Petitioner filed his traverse on November 28, 2018. Doc. #39.

## II. LEGAL STANDARDS
### A. Habeas Corpus

Pursuant to the Antiterrorism and Effective Death Penalty Act ("AEDPA"), which amended 28 U.S.C. § 2254, a writ of habeas corpus shall not be issued on a claim litigated on the merits in state court unless the state court's decision either:

(1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or

> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d). The "contrary to" and "unreasonable application" provisions in the first subsection have independent meanings. The "contrary to" provision applies "if the state court arrived at a conclusion opposite to that reached by the Supreme Court on a question of law, or reached a decision contrary to Supreme Court precedent when confronting facts that were materially indistinguishable." *Jackson v. Norris*, 651 F.3d 923, 925 (8th Cir. 2011). The "unreasonable application" clause pertains to instances where "the state court correctly identified the governing legal principle, but unreasonably applied it to the facts of the particular case." *Id*.

Section 2254(d) "limits the applicability of the AEDPA's deferential standard to claims that have been 'adjudicated on the merits' in state court." *Worthington v. Roper*, 631 F.3d 487, 495 (8th Cir. 2011) (citation omitted). Federal courts must "undertake only a limited and deferential review of underlying state court decisions." *Id.* (citation omitted). When the last state court fails to provide the rationale for the decision, district courts must "look through the unexplained decision to the last related state court decision that does provide a relevant rationale," and "presume that the unexplained decision adopted the same rationale." *Wilson v. Sellers*, 138 S. Ct. 1188, 1192 (2018). This presumption may be rebutted by a "showing that the unexplained [decision] relied or most likely did rely on different grounds than the lower state court's decision…." *Id.*

When the state courts' decisions do not include explanations, "the habeas petitioner's burden still must be met by showing there was no reasonable basis for the state court to deny relief…." *Harrington v. Richter*, 562 U.S. 86, 98 (2011). The district court must presume "the state court adjudicated the claim on the merits in the absence of any indication or state-law procedural principles to the contrary." *Id.* at 99 (citation omitted). But this presumption "may be overcome when there is reason to think some other explanation for the state court's decision is more likely." *Id.* at 99-100. The state court's determination that a habeas claim lacks merit – even if the determination is unexplained – "precludes habeas relief so long as 'fairminded jurists could disagree' on the correctness of the state court's decision." *Id.* at 101 (citing *Yarborough v. Alvarado*, 541 U.S. 652, 664 (2004)).

**B.     Eighth Amendment**

The Eighth Amendment prohibits infliction of "cruel and unusual punishments." U.S. Const. amend. VIII.[3]  This "right flows from the basic precept of justice that punishment for crime should be graduated and proportioned to [the] offense."  *Roper v. Simmons*, 543 U.S. 551, 560 (citations and internal quotations omitted).  Generally, Eighth Amendment cases involve either "categorical bans on sentencing practices based on mismatches between the culpability of a class of offenders and the severity of a penalty," or the mandatory imposition of a sentence without consideration of the offender's characteristics and the details of the offense.  *Miller*, 567 U.S. at 470 (citations omitted).  Regarding juvenile offenders, the United States Supreme Court recognized a "confluence of these two lines of precedent."  *Id.*

"As compared to adults, juveniles have a lack of maturity and an underdeveloped sense of responsibility; they are more vulnerable or susceptible to negative influences and outside pressures, including peer pressure; and their characters are not as well formed."  *Graham v. Florida*, 560 U.S. 48, 68 (2010) (internal quotations and citations omitted).  "From a moral standpoint it would be misguided to equate the failings of a minor with those of an adult, for a greater possibility exists that a minor's character deficiencies will be reformed."  *Roper*, 543 U.S. at 570.  When a juvenile offender is sentenced to life in prison without parole, the sentence "means denial of hope; it means that good behavior and character improvement are immaterial; it means that whatever the future may hold…, [the offender] will remain in prison for the rest of his days." *Graham*, 560 U.S. at 70 (citation omitted).

In *Miller v. Alabama*, the United States Supreme Court concluded a mandatory life sentence without parole for a juvenile homicide offender violated the Eighth Amendment.  567 U.S. at 479.  "By making youth (and all that accompanies it) irrelevant to imposition of the harshest prison sentence, such a scheme poses too great a risk of disproportionate punishment."  *Id.*

> Mandatory life without parole for a juvenile precludes consideration of his chronological age and its hallmark features – among them, immaturity, impetuosity, and failure to appreciate risks and consequences.  It prevents

---

[3] The Eighth Amendment is applicable to the states through the Fourteenth Amendment.  *Roper v. Simmons*, 543 U.S. 551, 560 (2005) (citations omitted).

taking into account the family and home environment that surrounds him – and from which he cannot usually extricate himself – no matter how brutal or dysfunctional.... [I]t ignores that he might have been charged and convicted of a lesser offense if not for incompetencies associated with youth – for example, his inability to deal with police officers or prosecutors (including on a plea agreement) or his incapacity to assist his own attorneys. And finally, this mandatory punishment disregards the possibility that rehabilitation even when the circumstances most suggest it.

*Id.* at 477-78 (internal citations and parentheticals omitted). While states are "not required to guarantee eventual freedom" to a juvenile offender, the sentence must provide "some meaningful opportunity to obtain release based on demonstrated maturity and rehabilitation." *Graham*, 560 U.S. at 75.

When deciding *Miller* applied retroactively to cases on state collateral review, the United States Supreme Court discussed potential remedies for *Miller* violations.

> Giving *Miller* retroactive effect…does not require States to relitigate sentences, let alone convictions, in every case where a juvenile offender received mandatory life without parole. A State may remedy a *Miller* violation by permitting juvenile homicide offenders to be considered for parole, rather than by resentencing them. Allowing those offenders to be considered for parole ensures that juveniles whose crimes reflected only transient immaturity – and who have since matured – will not be forced to serve a disproportionate sentence in violation of the Eighth Amendment.

*Montgomery*, 136 S. Ct. at 736 (citations and internal quotations omitted). "Extending parole eligibility to juvenile offenders does not impose an onerous burden on the States, nor does it disturb the finality of state convictions." *Id*. "The opportunity for release will be afforded to those who demonstrate the truth of *Miller*'s central intuition – that children who commit even heinous crimes are capable of change." *Id*.

### III.     DISCUSSION[4]

Petitioner argues his sentence violates his constitutional rights, and the new Missouri law does not resolve the constitutional violations.[5] Respondent contends

---

[4] Timeliness and exhaustion of state remedies are undisputed. 28 U.S.C. §§ 2244(d), 2254(b); *Rhines v. Weber*, 544 U.S. 269, 274 (2005); Doc. #6, at 3; Doc. #34, at 7.

[5] Petitioner also alleges violations of Missouri law and claims the new Missouri law is unconstitutional. "[I]t is not the province of a federal habeas court to reexamine state-court determinations on state-law questions." *Estelle v. McGuire*, 502 U.S. 62, 67-68 (1991) (citations omitted); *see also Wainwright v. Sykes*, 433 U.S. 72, 81 (1977).

Petitioner's claims are rendered moot by the new Missouri law, and the new Missouri law resolves any constitutional violation.

### A. *Miller* and *Montgomery*

Petitioner's argument that his sentence of life imprisonment without parole is unconstitutional was accepted, at least initially, by the Missouri Supreme Court when it concluded in March 2016 that the sentence did not comply with the requirements of *Miller* and *Montgomery*. Doc. #20-5. When issuing that decision, the Missouri Supreme Court stated Petitioner would be eligible for parole after serving twenty-five years "unless his sentence is otherwise brought into conformity with *Miller* and *Montgomery* by action of the governor…or legislation." *Id*. After the new Missouri law went into effect, the Missouri Supreme Court vacated its prior order and denied Petitioner's Petition. Doc. #20-2. That Order refers to the new Missouri law, but provides no additional explanation for the decision. *Id*.

Although it is simply cited, the rationale of the Missouri Supreme Court's decision is the new Missouri law. Even if the Court were to find the Missouri Supreme Court's decision was unexplained, this Court's decision would remain unchanged. As directed by the United States Supreme Court, this Court must "look through the unexplained decision to the last related state court decision" that provided a rationale, and presume "the unexplained decision adopted the same rationale." *Wilson*, 138 S. Ct. at 1192. But neither the Missouri Court of Appeals nor the Texas County Circuit Court provided any rationale for their decisions. Doc. #34-3, at 42; Doc. #34-2, at 77. So, this Court does not know the rationale of the state courts' decisions.

Nevertheless, it is undisputed Petitioner was a juvenile when he committed the offense, he was sentenced to life in prison without parole, and his sentence did not consider mitigating circumstances related to his youth. While Respondent argues the Missouri courts' decisions are not contrary to or an unreasonable application of clearly established United States Supreme Court precedent, Respondent does not set forth legal authority demonstrating Petitioner's sentence – a juvenile offender sentenced to

---

Because this Court cannot consider claims alleging violations of Missouri law, those claims are denied.

life in prison without parole – is constitutional. Petitioner's initial sentence was rendered unconstitutional by *Miller* and *Montgomery.*

### (1) Remedy for Constitutional Violation

The Court must now turn to whether the constitutional violation is remedied by the new Missouri law. The United States Supreme Court declared states could remedy a *Miller* violation by resentencing the juvenile offenders or permitting the juvenile offenders to be considered for parole. *Montgomery*, 136 S. Ct. at 736. Petitioner argues the new Missouri law does not resolve the constitutional violation, and thus, he is entitled to resentencing. Respondent contends the new Missouri law resolves any *Miller* violation because Petitioner is now eligible to apply for parole.

Among other things, the new Missouri law directs the parole board to consider certain factors for juvenile offenders sentenced to life in prison now eligible for parole after serving twenty-five years. Mo. Rev. Stat. § 558.047.5. These primary factors include the offender's efforts toward rehabilitation since the offense occurred; the offender's growth and maturity since the offense; the offender's acceptance of accountability for the offense; the offender's institutional record during incarceration; and whether the offender remains the same risk to society as he did at the time of the initial sentencing. *Id.* The statute also requires the parole board to consider factors listed in section 565.033.2, which include the nature and circumstances of the offense; the offender's degree of the culpability; his age, maturity, intellectual capacity, and mental and emotional health and development at the time of the offense; his background, including family, home, and community environment; likelihood for rehabilitation; the extent of his participation in the offense; effect of familial or peer pressure on his actions; the nature and extent of his criminal history; "the effect of characteristics attributable" to his youth on his judgment; and statement(s) by the victim or the victim's family. Mo. Rev. Stat. § 565.033.2.

With the enactment of section 558.047, Petitioner is no longer serving a sentence of life without parole. Petitioner may now apply for parole after he serves twenty-five years. This remedy was envisioned by the United States Supreme Court:

> Extending parole eligibility to juvenile offenders does not impose an onerous burden on the States, nor does it disturb the finality of state convictions. Those prisoners who have shown an inability to reform will continue to serve life sentences. The opportunity for release will be afforded to those who demonstrate the truth of *Miller*'s central intuition – that children who commit even heinous crimes are capable of change.

*Montgomery,* 136 S. Ct. at 736.

Petitioner argues that although the new Missouri law requires the parole board to consider certain factors, the law "does not <u>require</u> that the board release the offender if he or she demonstrates that he or she is 'capable of change.'" Doc. #20, at 16 (emphasis added); *see also* Mo. Rev. Stat. § 217.690.12. Petitioner's argument ignores the United States Supreme Court's pronouncement that states are "not required to guarantee eventual freedom" to juvenile offenders. *Graham*, 560 U.S. at 75.

### (2)   Habeas Cases After the New Missouri Law

Since the enactment of the new Missouri law, Missouri state courts have not considered, as best the Court can tell, a case involving the same circumstances as Petitioner's. In 2017, the Missouri Supreme Court found a juvenile offender sentenced to three life sentences without the possibility of parole for fifty years violated the Eighth Amendment because the jury was not given the opportunity to consider the mitigating circumstances of youth. *State ex rel. Carr v. Wallace*, 527 S.W.3d 55, 60-62 (Mo. banc 2017). The Missouri Supreme Court concluded Carr was entitled to resentencing. *Id.* at 63. The new Missouri law is not mentioned in the decision, likely because the statute only pertains to juvenile offenders sentenced to life <u>without</u> parole, and Carr was eligible for parole after serving fifty years. *See Willbanks v. Dep't of Corrs.*, 522 S.W.3d 238, 234 (Mo. banc 2017) (declining to extend section 558.047 to sentences other than life in prison without parole).

Relatedly, the Missouri Court of Appeals found a juvenile offender's sentence of life without the possibility of parole for fifty years violated the Eighth Amendment because there was no opportunity to consider the juvenile offender's youth and related circumstances. *Edwards v. Steele*, 533 S.W.3d 238, 244 (Mo. Ct. App. 2017). The appellate court directed the trial court to resentence the petitioner in accordance with the *Miller* factors. *Id.* Neither *Carr* nor *Edwards* is persuasive in this case because

those juvenile offenders' sentences, unlike Petitioner's sentence, included eligibility for parole.

In this Court, the Honorable Dean Whipple denied habeas relief to a juvenile offender sentenced to life without parole. *Ramirez v. Griffith*, No. 16-CV-1058 (W.D. Mo. Dec. 2, 2016) (Doc. #8). Judge Whipple found the new Missouri law incorporated "many of the youth-related concerns identified in *Miller*, such as the offender's age and maturity, his family environment, the circumstances of the offense, and prospects for rehabilitation." *Id.* at 5. Ramirez was also denied a certificate of appealability. *Id.* at 6. Ramirez applied for a certificate of appealability with the Eighth Circuit Court of Appeals, but his application was denied. No. 16-CV-1058 (Docs. #19-20). Ramirez's petition for writ of certiorari was denied by the United States Supreme Court.

Similarly, the District Court for the Eastern District of Missouri denied habeas relief to a juvenile offender sentenced to life without parole because the new Missouri law comports with *Miller* and *Montgomery*. *Saddler v. Pash*, No. 16-CV-363, 2018 WL 999979, at *3 (E.D. Mo. Feb. 21, 2018). The Honorable Audrey Fleissig noted *Montgomery* permitted parole eligibility to remedy a *Miller* violation, and the new law "incorporates that remedy and further takes into account many of the youth-related concerns identified in *Miller*." *Id.* Given the similarities to this case, *Ramirez* and *Saddler* are persuasive.

(3) <u>Class Action Involving the New Missouri Law</u>

In his Traverse, Petitioner relies on a decision recently issued in this Court. In a class action alleging violations of 42 U.S.C. § 1983, the Honorable Nanette Laughrey granted in part the plaintiffs' motion for summary judgment, finding Missouri's policies, procedures, and customs for parole review for juvenile offenders sentenced to life without parole violated the constitutional requirement that they "be provided a meaningful and realistic opportunity for release based on demonstrated maturity and rehabilitation." *Brown v. Precythe*, No. 2:17-CV-4082-NKL, 2018 WL 4956519, at *6-10 (W.D. Mo. Oct. 12, 2018).[6] The Court directed the defendants to file a plan complying

---

[6] In June 2018, the Court certified a class of plaintiffs consisting of "[i]ndividuals in the custody of the Missouri Department of Corrections who were sentenced to life without

10

with constitutional and statutory requirements.  *Id.* at *12.  The defendants filed their plan on December 11, 2018, and the plaintiffs responded to the plan on January 10, 2019.  No. 17-CV-4082 (Docs. #165-66).  At this time, the Court has not issued a decision related to the compliance plan.[7]

Based upon *Brown*, Petitioner contends the "remedy" for his constitutional violation, as applied, does not afford him the relief to which he is entitled.  He has served twenty-three years of his sentence, and he will be eligible to apply for parole in two years.  By that time, the State, in all likelihood, will have implemented policies, procedures, and customs that comply with constitutional requirements.  Regardless, claims challenging the constitutionality of a future parole hearing are premature.  The Court cannot consider claims based on a future application of the law.  Likewise, the Court will not entertain a hearing, as Petitioner requests, to ascertain the adequacy of his opportunity for parole when he applies in two years.

(4)  <u>Opportunity for Release</u>

Juvenile offenders sentenced to life in prison must be given a meaningful and realistic opportunity to obtain release based upon demonstrated maturity and rehabilitation.  *Graham*, 560 U.S. at 75.  The new Missouri law, on its face, provides a meaningful and realistic opportunity for release.  Petitioner is eligible to apply for parole after serving twenty-five years.  Mo. Rev. Stat. § 558.047.1(1).  Before the law was enacted, Petitioner was not eligible for parole.  To the extent Petitioner is arguing his opportunity for release will not be meaningful and/or realistic when he applies for parole in two years, his argument is premature.  Based upon the record before it and pursuant to *Montgomery*, *Miller*, *Graham*, and *Roper*, this Court concludes the new Missouri law

---

parole under a mandatory sentencing scheme and who were under 18 years of age at the time of the offense."  *Brown v. Precythe*, No. 17-CV-4082, 2018 WL 3118185, at *8-9 (W.D. Mo. June 25, 2018).  Petitioner was identified as a class member.  No. 2:17-CV-4082 (Doc. #104-1, at 2).

[7] In a footnote, Petitioner states "[i]t may be appropriate for the Court to defer a ruling on [his] petition" until a compliance plan is presented in *Brown*.  Doc. #39, at 22 n.4.  He does not provide authority supporting this suggestion.  Regardless, the Court declines to defer its ruling because the claims and relief sought in this matter are unique to those alleged in *Brown*.

provides an appropriate remedy to Petitioner's *Miller* violation, and denies Petitioner's claims based upon *Miller* and *Montgomery*.[8]

### B. Due Process

The basis of Petitioner's due process claim is unclear. It appears he alleges his due process rights are violated because the new Missouri law makes him eligible for parole, and the parole board decides if he is entitled to parole. But, as explained *supra*, the new Missouri law provides an appropriate remedy, as set forth in *Miller*. Petitioner has been afforded the relief to which he is entitled – to wit, an opportunity to apply for parole in two years. He does not identify how his due process rights were violated when he was granted this relief. Accordingly, any claim based upon an alleged violation of Petitioner's due process rights is denied.

### C. Equal Protection

To support an equal protection claim, Petitioner argues he "is entitled to the same rights as a juvenile defendant charged with first degree murder today." Doc. #20, at 9. He claims new juvenile defendants "will receive a full and fair adversarial sentencing," and could be sentenced to less than thirty years.[9] *Id*.

"The Equal Protection Clause of the Fourteenth Amendment commands that no State shall deny to any person within its jurisdiction the equal protection of the laws, which is essentially a direction that all persons similarly situated should be treated alike." *City of Cleburne v. Cleburne Living Ctr.*, 473 U.S. 432, 439 (1985) (quotations and internal citation omitted). A petitioner must show he was intentionally treated differently because of his membership in an identifiable group or a constitutionally suspect class. *DeShaney v. Winnebago Cnty. Dept. of Soc. Servs.*, 489 U.S. 189, 197

---

[8] In the Traverse, Petitioner suggests he is bringing a claim under *Hicks v. Oklahoma*, 447 U.S. 343 (1980). However, in the Amended Petition, Petitioner cited *Hicks* for his argument that he is "entitled to the benefit of Missouri law as applied to other litigants." Doc. #20, at 9. Assuming he sufficiently alleged a claim under *Hicks*, which is doubtful, the claim is denied for the same reason as his other "as applied" claims.

[9] This explanation of Petitioner's due process claim represents the entire extent the claim was presented to the Missouri Supreme Court. Doc. #34-1, at 19-20.

n.3 (1989); *United States v. Bell*, 86 F.3d 820, 823 (8th Cir. 1996). At a minimum, Petitioner does not present evidence of discriminatory effect or purpose. *United States v. Strayhorn*, 409 F. App'x 979, 982 (8th Cir. 2011). Petitioner also fails to identify a similarly situated person who was treated better than he was treated. Because Petitioner has not established these basic requirements, his equal protection claim fails.

## IV. CERTIFICATE OF APPEALABILITY

In order to appeal, Petitioner must obtain a Certificate of Appealability, which should be issued only if he "has made a substantial showing of a denial of a constitutional right." 28 U.S.C. § 2253(c)(2). This showing is established if reasonable jurists could disagree as to how the issue should be resolved. *Miller-El v. Cockrell*, 537 U.S. 322, 336 (2003). The Court does not believe that the issues Petitioner has raised are subject to debate among reasonable jurists, so the Court declines to issue a Certificate of Appealability.

## V. CONCLUSION

For the foregoing reasons, Petitioner's Amended Petition for Writ of Habeas Corpus is denied, and the Court declines to issue a Certificate of Appealability.

IT IS SO ORDERED.

/s/ Ortrie D. Smith
ORTRIE D. SMITH, SENIOR JUDGE
DATE: January 24, 2019                UNITED STATES DISTRICT COURT